# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

NESTOR R. MORALES,

                Petitioner,

v.

C. Y. TAMPKINS, Warden,

                Respondent.

Case No.:  17cv0210-AJB (NLS)

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

      Nestor R. Morales (hereinafter "Petitioner") is a state prisoner proceeding pro se and in forma pauperis with a Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  (ECF No. 1.)  Petitioner was convicted in the San Diego Superior Court following a jury trial at which he represented himself, of sale of methamphetamine (count one), possession for sale of methamphetamine (count two), and possession of methamphetamine (count three), and was sentenced to seven years on count one with concurrent sentences on counts two and three.  His conviction on count three was later reduced to a misdemeanor under Proposition 47, and he was resentenced to time served on that count, with the seven-year sentence remaining intact.[1]  He claims here that his federal constitutional rights were

---

[1] Proposition 47 reduced some drug possession offenses to misdemeanors for qualified defendants, and permits the filing of a petition to recall a sentence to have felony convictions reduced to misdemeanors and the defendant resentenced.  See People v. Rivera, 233 Cal. App. 4th 1085, 1091-93 (2015).

violated because he was denied his rights to compulsory process and to an effective investigator, which prevented him from obtaining a statement from his co-defendant which might have supported an entrapment defense (claim one), he received ineffective assistance of appellate counsel in failing to raise claim one (claim two), he received ineffective assistance of Proposition 47 counsel in waiving his presence at the hearing, failing to ensure proper custody credits, and failing to notify him of the results until after the time to appeal had expired (claim three), the trial court abused its discretion in denying his habeas petition as successive (claim four), and the appellate court abused its discretion in denying his habeas petition as untimely (claim five). (Pet. at 6-35.)[2]

Respondent has filed an Answer and lodged portions of the state court record. (ECF Nos. 6-7.) Respondent contends that claims one through four are procedurally defaulted because the state court found them to be untimely and successive before alternately denying them on the merits, that none of the claims are sufficiently meritorious to provide for federal habeas relief, and that an evidentiary hearing is unwarranted. (Memo. of P&A in Supp. of Answer ["Ans. Mem."] at 15-26.)

Petitioner has filed a Traverse. (ECF No. 11.) He argues that his claims are not defaulted because the state court erred in finding them untimely and successive, that his claims merit relief, and that an evidentiary hearing is warranted. (Traverse at 1-9.)

For the following reasons, the Court finds that judicial economy counsels in favor of denying the Petition irrespective of any procedural default because, even assuming the claims are defaulted or Petitioner can overcome any default, federal habeas relief is unavailable because the claims clearly fail on the merits. The Court also finds that an evidentiary hearing is unnecessary, and recommends the Petition be denied.

## I.     PROCEDURAL BACKGROUND

In a three-count Complaint, deemed to be an Information, filed in the San Diego County Superior Court on January 8, 2014, Petitioner and his co-defendant Jose Antonio

---

[2] All pleading citations are to page numbers as assigned by the Electronic Case Filing ("ECF") system.

17cv0210-AJB (NLS)

Pina were charged with sale of methamphetamine in violation of California Health and Safety Code § 11379(a) (count one), possession for sale of methamphetamine in violation of California Health and Safety Code § 11378 (count two), and possession of methamphetamine in violation of California Health and Safety Code § 11377(a) (count three). (Lodgment No. 1, Clerk's Transcript ["CT"] at 1-7.) As to counts one and two, it was alleged that Petitioner and Pina had prior convictions for possession for sale of cocaine or methamphetamine in violation of Health and Safety Code §§ 11370.2(c) and 1203.07(a)(11). (Id.) It was also alleged that Petitioner had a prior conviction for robbery which constituted a "strike" under California's Three Strikes law. (Id. at 4.)

Pina entered a guilty plea and received a three-year sentence. (CT 231.) Petitioner rejected the same offer and proceed to trial where he represented himself. (CT 276.) On May 5, 2014, a jury found him guilty on all counts. (CT 289-91.) He admitted the prior strike and the prior drug conviction, and on July 11, 2014, was sentenced to seven years in state prison on count one, with concurrent terms on the remaining counts. (CT 296-97.)

Petitioner appealed, raising claims not presented here. (Lodgment Nos. 4-6.) The appellate court affirmed. (Lodgment No. 7, People v. Morales, No. D066337, slip op. (Cal.App.Ct. Nov. 12, 2015).) He did not seek review in the state supreme court.

On December 22, 2015, Petitioner was granted partial relief under Proposition 47. He was denied relief on counts one and two, but his conviction on count three was reduced from a felony to a misdemeanor and he was resentenced to time served on that count, leaving intact his seven-year sentence on count one and the concurrent term on count two. (Lodgment Nos. 12-14.) On April 1, 2016, Petitioner filed a habeas petition in the trial court in which he raised claims one and two presented here. (Lodgment No. 15.) On May 13, 2016, the trial court denied the petition on the merits of the claims. (Lodgment No. 16, In re Morales, No. HD 22434, order (Cal.Sup.Ct. May 13, 2016).)

On May 26, 2016, Petitioner filed a habeas petition in the state appellate court in which he raised claims one and two here, along with a claim not presented here alleging a failure to instruct the jury on entrapment. (Lodgment No. 17.) The appellate court denied

the petition on June 8, 2016, on the basis that it was untimely because it was filed nearly two years after sentencing without any explanation for the delay, on the basis that claim one and the instructional error claim could have been raised on appeal but were not, and, alternately, on the merits of the claims. (Lodgment No. 18, In re Morales, No. D070421, order (Cal.App.Ct. June 6, 2016).)

On June 27, 2016, Petitioner filed a second habeas petition in the trial court in which he raised the same claims he raised in his first habeas petition filed in that court, plus claim three here. (Lodgment No. 19.) The petition was denied on the basis that it repeated previously litigated claims without a showing of new facts or law, and as successive. (Lodgment No. 20, In re Morales, No. HC 22434, order (Cal.Sup.Ct. Sept. 2, 2016).) Petitioner filed a second habeas petition in the appellate court on October 4, 2016, presenting claims one through four presented here. (Lodgment No. 21.) The appellate court denied the petition as untimely, as successive to the extent it raised claims which were or could have been raised in the first petition (referring to claims one and three here), and refused to address the claim that the trial court erred in denying his petition (claim four here) because such an order is not appealable or reviewable by an appellate court. (Lodgment No. 22, In re Morales, No. D071149, order (Cal.App.Ct. Oct. 14, 2016).)

On November 2, 2016, Petitioner filed a habeas petition in the state supreme court raising all claims presented here. (Lodgment No. 23.) That petition was denied on January 11, 2017, with an order which stated: "Petition for writ of habeas corpus denied." (Lodgment No. 24, In re Morales, No. S238158, order (Cal. Jan. 11, 2017).)

## II.  TRIAL PROCEEDINGS

John Queen, a San Diego Police Detective, testified that about 5:30 p.m. on October 16, 2013, he was working undercover in the area of 500 C Street in San Diego, California. (Lodgment No. 2, Reporter's Tr. ["RT"] at 189.) He was sitting in a wheelchair pretending one leg was amputated, carrying marked cash, and being pushed by Officer Gonzalez, who was also undercover. (RT 190-93.) Officer Queen approached two Hispanic males, later identified as Jorge Aguiniga and Petitioner's co-defendant Jose Pina, and asked them if

they knew where he could get some "black," referring to black tar heroin. (RT 194-97.) Pina said he could get "cris," referring to crystal methamphetamine, and that he would go find his "homeboy" who had just ridden off on a bicycle. (RT 197.) Officer Queen told Pina he wanted $60 worth of crystal methamphetamine. (RT 197.) When Pina indicated he was having trouble finding his friend, he used Officer Queen's cellphone and told someone on the phone "he had 60 and wanted to meet up." (RT 199-204.)

Officer Queen, Officer Gonzalez, Pina and Aguiniga walked around downtown trying to find Pina's friend, and after Pina made several more calls to his friend, Officer Queen told Pina he would give Pina $10 for helping him, and Pina pointed out Petitioner, who was riding a bicycle. (RT 204-14.) Officer Queen gave Pina three marked $20 bills, Pina spoke with Petitioner, and Pina told Officer Queen that they would have to go to the Subway restaurant so Petitioner could go to the bathroom and get the methamphetamine. (RT 214-16.) Officer Queen went inside Subway, where he saw Pina briefly speak to Petitioner, and Pina told Officer Queen Petitioner was waiting his turn for the bathroom. (RT 216-17.) Officer Queen waited outside smoking a cigarette and watched through the window as Petitioner went into the bathroom. (RT 217.) When Petitioner and Pina came out of the restaurant together, Pina looked over his shoulder at Officer Queen and held up his finger indicating for him to wait a moment, and walked a few feet away with Petitioner. (RT 217-18.) Petitioner and Pina were huddled face to face, and Officer Queen saw a hand-to-hand transaction between them. (RT 218.) Pina then approached Officer Queen and gave him a plastic bindle containing what the parties stipulated was 0.42 grams of methamphetamine, and Officer Queen gave Pina a marked $10 bill. (RT 220-25, 310.) Officer Queen gave a predetermined bust signal to other officers in the area, and Petitioner and Pina were arrested by uniformed officers several minutes later. (RT 224-26.)

Adam Schrom, a San Diego Police Officer, testified that he was working in uniform on October 16, 2013, as a member of a team of officers buying drugs from street-level dealers. (RT 268-69.) About 6:00 p.m., Officer Schrom was advised by Officer Queen that narcotics had been purchased, received a description of the seller, and arrested

5

Petitioner based on Officer Queen's identification. (RT 270-72.) A search of Petitioner revealed three marked $20 bills which Officer Queen had in his possession earlier that evening, an additional $67, a black bag on his shoulder containing four small baggies and a scale, and a baggie containing a crystal-like substance in his pants pocket; a similar baggie was found under the chair he was sitting on. (RT 273-75, 285-87.) The parties stipulated that the baggie found in his pants pocket contained 0.01 grams of methamphetamine, and the baggie under his chair contained 0.05 grams of methamphetamine. (RT 310-11.)

Jason Hagel, a San Diego Police Officer, testified that he was a member of the buy/bust team in the C Street area of downtown San Diego on October 16, 2013, assigned as an arresting officer. (RT 302-03.) Officer Hagel detained Jose Pina after receiving a signal from Officer Queen, and a search revealed a pre-recorded $10 bill in Pina's right front pants pocket. (RT 303-06.) Pina and Petitioner were arrested and placed in the back of Officer Hagel's patrol car, which was equipped with a recording device. (RT 307.)

Jesus Sanchez, a San Diego Police Officer, testified that he is a certified Spanish interpreter, and that he translated a recording made of a conversation in Spanish between Petitioner and Pina in the back of a patrol car. (RT 312-13.) Petitioner said he had two "drops" on him when he was arrested, and "they didn't see that you gave me the money. That's a good thing." (RT 316-18.) After Pina said: "I received $10," Petitioner asked: "Is it marked?" (RT 329.) Both Pina and Petitioner referred to a guy in a wheelchair as a "client," and Pina said: "When you gave me that thing, I gave it to him." (RT 326-27.) The People rested, and the defense rested without presenting evidence. (RT 334, 340.)

After deliberating about thirty minutes, the jury found Petitioner guilty of selling or furnishing a controlled substance, guilty of possession of a controlled substance for sale, and guilty of possession of a controlled substance. (RT 289-93.) Petitioner admitted he had been convicted of robbery on August 27, 1987, and had been convicted of possession of cocaine for sale on September 17, 1998. (RT 277-81; CT 241.)

Petitioner moved for a new trial, arguing that: (1) the trial court erred in refusing to instruct the jury on the defense of entrapment, (2) he was denied a public trial because the

jury was excused while he argued for an entrapment instruction, and (3) he was unable to obtain surveillance video from the area where he sold the drugs, or testimony from Pina, due to ineffective assistance of investigative services. (RT 504-40.) The trial judge denied the new trial motion, and denied Petitioner's motion to strike his 27-year old strike. (RT 537-40, 565-66.) On July 11, 2014, Petitioner was sentenced to seven years in prison, which consisted of two years on count one, doubled due to the strike, plus a three-year consecutive enhancement for the prior drug conviction; a concurrent term of 16 months on count two, doubled due to the strike, with a concurrent three-year enhancement for the prior drug conviction; and a concurrent term of 16 months on count three, doubled due to the strike. (RT 566-69.) His Proposition 47 petition was granted in part and denied in part on December 22, 2015, and count three was reduced to a misdemeanor, although his seven-year sentence was not affected. (Lodgment Nos. 12-13.) He was released to a community re-entry program on April 17, 2017. (ECF No. 8 at 1.)

## III.  DISCUSSION

Petitioner claims that his federal constitutional rights were violated because he was denied his right to compulsory process to obtain the testimony of his co-defendant Pina, and denied the right to an effective investigator by the failure of his assigned investigator to interview Pina, who might have been able to support an entrapment defense (claim one), he received ineffective assistance of appellate counsel because counsel failed to raise claim one on appeal (claim two), he received ineffective assistance of Proposition 47 counsel because counsel waived Petitioner's presence, failed to ensure proper custody credits, and failed to notify him in time to appeal (claim three), the trial court abused its discretion in denying his habeas petition as successive (claim four), and the appellate court abused its discretion in denying his habeas petition as untimely (claim five). (Pet. at 6-35.)

Respondent has filed an Answer and lodged portions of the state court record. (ECF Nos. 6-7.) Respondent contends that claims one through four are procedurally defaulted because they were denied by the state court as untimely and successive, that all claims are without merit, and an evidentiary hearing is unwarranted. (Ans. Mem. at 15-26.) Petitioner

replies that his claims are not procedurally defaulted because the state court erred in finding them untimely and successive, that his claims merit relief, and that an evidentiary hearing is warranted. (Traverse at 1-9.)

### A. Standard of Review

In order to obtain federal habeas relief with respect to a claim which was adjudicated on the merits in state court, a federal habeas petitioner must demonstrate that the state court adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d) (West 2006). Even if § 2254(d) is satisfied, a petitioner must show a federal constitutional violation occurred in order to obtain relief. <u>Fry v. Pliler</u>, 551 U.S. 112, 119-22 (2007); <u>Frantz v. Hazey</u>, 533 F.3d 724, 735-36 (9th Cir. 2008) (en banc).

A state court's decision may be "contrary to" clearly established Supreme Court precedent (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000). A state court decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." <u>Id.</u> at 407. Relief under the "unreasonable application" clause of § 2254(d) is available "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." <u>White v. Woodall</u>, 572 U.S. ___, 134 S.Ct. 1697, 1706-07 (2014), quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 103 (2011). In order to satisfy § 2254(d)(2), the petitioner must show that the factual findings upon which the state court's adjudication of his claims rest are objectively unreasonable. <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

8

## B. Procedural Default

Respondent argues that claims one through four are procedurally defaulted because they were denied in the state court on the basis of state procedural bars precluding untimely and successive petitions. (Ans. Mem. at 15-16.) Respondent argues that although the claims were denied on the merits in state court in the alternative, it does not preclude a procedural default in this court. (Id. at 16.)

Petitioner replies that the claims are not procedurally defaulted because the state court erred in finding his habeas petitions untimely and successive. He argues that, on the advice of counsel, he waited until his convictions were affirmed and after his Proposition 47 resentencing before seeking habeas relief, and that in any case he sought relief within one year of the end of his direct appeal as permitted by 28 U.S.C. § 2244(d)(1)(A) (providing for a one-year statute of limitations applicable to federal habeas petitions filed in federal court running from the "date on which the [state court] judgment becomes final by the conclusion of direct review or the expiration of the time for seeking such review.") (Pet. at 31-33; Traverse at 1-2.) He also argues his petitions were not successive because he added new facts, new claims and new law. (Id.)

In order to preclude federal review based on a procedural default, a state procedural bar must rest on a state ground which is "independent" of federal law and "adequate" to forever bar federal review. Coleman v. Thompson, 501 U.S. 722, 735 (1991). To be "independent" the state law basis for the decision must not be interwoven with federal law. Michigan v. Long, 463 U.S. 1032, 1040-41 (1983). In order to be "adequate," the state procedural bar must be "clear, consistently applied, and well-established at the time of the petitioner's purported default." Calderon v. Bean, 96 F.3d 1126, 1129 (9th Cir. 1996).

"[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989) (internal quotation marks omitted). A procedural default does not arise where a state court erroneously applies a state procedural rule. Sivak v. Hardison, 658 F.3d

898, 907 (9th Cir. 2011); see also Lee v. Kemna, 534 U.S. 362, 375 (2002) (holding there are "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question.")  A court may reach the merits of a procedurally defaulted claim if the petitioner demonstrates cause for his failure to satisfy the state procedural rule and prejudice arising from the default, or that a fundamental miscarriage of justice would result from the Court not reaching the merits of the defaulted claim.  Coleman, 501 U.S. at 750.

Claims one through four were presented to the state supreme court in a habeas petition which was summarily denied without citation or a statement of reasoning. (Lodgment Nos. 23-24.)  The most recent state court decision addressing claims one through four prior to the silent denial by the state supreme court (and the only other court to address claim four) is the appellate court order denying the second appellate court habeas petition.  (Lodgment No. 22, In re Morales, No. D071149, order at 2-3.)

There is a presumption that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment *or rejecting the same claim* rest upon the same ground."  Ylst v. Nunnemaker, 501 U.S. 797, 803-06 (1991) (emphasis added).  The second state appellate court order stated:

> Morales is not entitled to habeas relief.  The petition, filed 27 months after he was sentenced, 11 months after the judgment was affirmed on appeal, and nearly 10 months after the Proposition 47 petition was granted, without any explanation for the delay, is barred as untimely.  (*In re Robbins* (1998) 18 Cal.4th 770, 787; *In re Swain* (1949) 34 Cal.2d 300, 302.)  "[T]he filing of untimely claims without any serious attempt at justification is an example of abusive writ practice."  (*In re Reno* (2012) 55 Cal.4th 428, 460.)  The petition is further barred as repetitive to the extent it reasserts the same claims this court rejected in Morales's earlier habeas corpus proceeding.  "It is, of course, the rule that a petition for habeas corpus based on the same grounds as those of a previously denied petition will itself be denied when there has been no change in the facts or law substantially affecting the rights of the petitioner." (*In re Martin* (1987) 44 Cal.3d 1, 27, fn. 3)  Morales has identified no such change in law or facts.  The petition is barred as successive to the extent it asserts variations of previously rejected claims and the previously unasserted claim that counsel provided ineffective assistance in connection with the

Proposition 47 petition, because those claims could have been raised in the prior habeas corpus proceeding but were not. (*In re Reno, supra*, at p. 501; *In re Horowitz* (1949) 33 Cal.2d 534, 546-547.) "In this state a defendant is not permitted to try out his contentions piecemeal by successive proceedings attacking the validity of the judgment against him." (*In re Connor* (1940) 16 Cal.2d 701, 705.) "Entertaining the merits of successive petitions is inconsistent with our (Supreme Court's) recognition that delayed and repetitious presentation of claims is an abuse of the writ." (*In re Clark* (1993) 5 Cal.4th 750, 769.) Morales's failure to overcome these procedural obstacles to consideration of his claims justifies summary denial without this court's consideration of the merits. (*In re Reno, supra*, at p. 511; *In re Clark, supra*, at p. 799.)

Finally, this court does not address the complaints Morales makes against the superior court's order denying habeas corpus relief. That order is neither appealable nor otherwise reviewable by this court. (*In re Clark, supra*, 5 Cal.4th at p. 767, fn. 7; *Jackson v. Superior Court* (2010) 189 Cal.App.4th 1051, 1064.)

(Lodgment No. 22, <u>In re Morales</u>, No. D071149, order at 2-3.)

Thus, claims one and two raised here (which were raised and denied in the first appellate court habeas proceeding) were denied in the second appellate court order as repetitive because they had been addressed in the prior order. That bar does not support a procedural default in this Court. <u>See Koerner v. Grigas</u>, 328 F.3d 1039, 1053 (9th Cir. 2003) ("A claim cannot be both previously litigated and procedurally defaulted; . . . When either ground is a possibility, the choice between them is wholly arbitrary. It is not our role to make such a choice."); <u>Ylst</u>, 501 U.S. at 803-04 ("Since a later state decision based upon ineligibility for further state review neither rests upon procedural default nor lifts a pre-existing procedural default, its effect upon the availability of federal habeas is nil-which is precisely the effect accorded by the 'look-through' presumption.")

Petitioner also presented claims one and two in his first appellate court habeas petition. (Lodgment No. 17.) The appellate court denied the petition, stating:

Morales is not entitled to habeas corpus relief. His petition, filed nearly two years after sentencing without any explanation for the delay, is barred as untimely. (*In re Reno* (2012) 55 Cal.4th 428, 459; *In re Swain* (1949) 34

17cv0210-AJB (NLS)

Cal.2d 300, 302.)  The petition is further barred, in part, because the first two claims [referring to claim one here and an entrapment instruction claim] could have been raised on appeal, but were not.  (*In re Reno, supra*, at p. 490; *In re Dixon* (1953) 41 Cal.2d 756, 759.)  Morales's "failure to affirmatively address the applicability of procedural obstacles to consideration of the claims raised in (his) habeas corpus petition justifies summary denial without the court's consideration of the merits."  (*In re Reno, supra*, at p. 511.)

Even if the petition were not procedurally barred, it would be denied for failing to state a prima facie case.  A petitioner seeking a writ of habeas corpus bears a "heavy burden" to plead a prima facie claim for relief, and to do so must allege the specific facts constituting the claim and support it with declarations, transcripts, and other reasonably available documents.  Morales has neither specifically alleged what Pina would have said regarding entrapment had he been timely interviewed and then summoned to testify at trial nor provided a declaration from Pina concerning such testimony.  In any event, the evidence introduced at trial does not even remotely suggest the possibility of an entrapment defense.  As summarized in the opinion on appeal, undercover police officers approached Pina on the street and said they wanted to buy drugs, Pina telephoned Morales and obtained drugs from him, and Pina then completed the sale.  Morales's conclusory assertions he was entrapped, made without any evidentiary support in the record, are insufficient to satisfy his pleading burden on the claims he was deprived of due process and a fair trial.  (*Ibid*.)  Finally, without any evidence to support an entrapment defense in the record, appellate counsel did not provide ineffective assistance by failing to raise claims of error dependent on such evidence.  (See e.g., *In re Smith* (1970) 3 Cal.3d 192, 202 (appellate counsel has duty "to raise crucial assignments of error, which arguably might have resulted in a reversal"); *Redante v. Yockelson* (2003) 112 Cal.App.4th 1351, 1357 (appellate counsel has "no duty to argue every issue (the client) wanted to raise, but rather was entitled to assess which issues were potentially meritorious").)

(Lodgment No. 18, <u>In re Morales</u>, No. D070421, order at 2.)

Thus, in addition to an alternate holding on the merits, claim one was denied in the first appellate court order on the basis that it could have been raised on appeal but was not, and claim two, alleging ineffective assistance of appellate counsel for failing to raise claim one, was denied on the basis that there was no support for claim one.  Claim four was denied on the basis that an appellate court lacks jurisdiction to review the habeas decision of a trial court.  As set forth below, claim three was presented for the first time in the second

trial court habeas petition, which denied it as improperly raised in a successive petition. It was then filed in the second appellate court habeas petition, and denied on the basis that it could have been but was not raised in the first appellate court habeas petition. All four claims were also denied as untimely.

Respondent has the initial burden of pleading as an affirmative defense that a failure to satisfy a state procedural rule forecloses federal review. Bennett v. Mueller, 322 F.3d 573, 586 (9th Cir. 2003). The burden then shifts to Petitioner to challenge the independence or adequacy of the procedural bar. Id. If Petitioner makes a sufficient showing, then the ultimate burden of proof falls on Respondent. Id.

Respondent has not carried the Bennett burden with respect to claims which could have been but were not raised on appeal, or which were denied on the basis that they had already been presented and denied. See Fields v. Calderon, 125 F.3d 757, 763-65 (9th Cir. 1997) (holding that California's "Dixon rule [that habeas corpus cannot serve as a substitute for appeal] is not an adequate state ground to bar federal review of Fields' defaulted claims."); Koerner, 328 F.3d at 1053 ("A claim cannot be both previously litigated and procedurally defaulted.")

Respondent has, however, satisfied the Bennett burden with respect to the timeliness bar. See Walker v. Martin, 562 U.S. 307, 312-21 (2011) (holding that California's timeliness rule requiring that a petitioner must seek relief without "substantial delay" as "measured from the time the petitioner or counsel knew, or should reasonably have known, of the information offered in support of the claim and the legal basis for the claim," is clearly established and consistently applied); Bennett, 322 F.3d at 581 ("We conclude that because the California untimeliness rule is not interwoven with federal law, it is an independent state procedural ground.")

Accordingly, the burden has shifted to Petitioner to challenge the independence or adequacy of the timeliness bar. Bennett, 322 F.3d at 586. Petitioner can carry his burden by showing that the timeliness rule was erroneously applied in his case. Sivak, 658 F.3d at 907; see also Kemna, 534 U.S. at 375 (holding there are "exceptional cases in which

exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question.")  He attempts to do by contending he filed his habeas petition within one year of the denial of his direct appeal as provided by the one-year statute of limitations for filing federal habeas petitions set forth in 28 U.S.C. § 2244(d)(1)(A), by contending that California law permits challenges to excessive sentences at any time, and by alleging the delay was based on the advice of counsel or his need to wait until after his conviction became final and after he was resentenced following his Proposition 47 hearing. (Pet. at 33; Traverse at 1-2.)  Even if Petitioner fails to carry his <u>Bennett</u> burden, the Court can still address the merits of claims two through four if he can demonstrate cause for his failure to satisfy the state procedural rule and prejudice arising from the default, or that a fundamental miscarriage of justice would result from the Court not reaching the merits of the defaulted claim.  <u>Coleman</u>, 501 U.S. at 750.

Thus, in order to determine if claims one through four are procedurally defaulted, the Court would have to examine whether Petitioner has shown the state court erroneously applied its timeliness bar.  <u>Sivak</u>, 658 F.3d at 907.  If Petitioner fails to make that showing, the Court would have to examine whether cause exists to excuse the default, which would require an examination of the merits of his ineffective assistance of counsel claims.  <u>See</u> <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986) ("[I]f the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State."); <u>see also</u> <u>Martinez v. Ryan</u>, 566 U.S. 1, 17 (2012) ("Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.")  The Court would then need to determine whether prejudice to excuse the default exists, which would likely require an examination of the merits of all claims. <u>Coleman</u>, 501 U.S. at 750.  The Court would then need to determine whether a fundamental miscarriage of justice would arise as a result of the default.  <u>Id.</u>

As set forth below, claim two alleges ineffective assistance of appellate counsel for failing to raise claim one on appeal, and both claims fail for essentially the same reason, because Petitioner has not alleged how he was prejudiced by the failure to interview his codefendant Pina or call him as a trial witness. Claim three requires an examination of appointed counsel's performance at, and failure to timely inform Petitioner regarding the outcome of, his Proposition 47 hearing, and clearly fails on the merits. Claim four relies solely on an error of state law and is not cognizable on federal habeas.

Because these claims all clearly fail on their merits, the Court finds that the interests of judicial economy will be better served by addressing the merits of these claims without determining whether they are defaulted or whether Petitioner has made a showing sufficient to excuse a default. The Ninth Circuit has indicated that: "Procedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same." Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002), citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997) ("We do not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be.")

For the reasons set forth below, Petitioner's claims clearly fail on their merits. Accordingly, the Court recommends denying habeas relief without a determination regarding whether claims one through four are procedurally defaulted.

## C.  Claim One

Petitioner contends in claim one that his federal constitutional rights were violated because he was denied his right to compulsory process necessary to obtain the testimony of his co-defendant Pina, and denied the right to an effective investigator due to the failure of the investigator to interview Pina. (Pet. at 6, 19-27.) Specifically, he states that his ancillary service request for an investigator to interview Pina was approved on April 1, 2014, before the start of his trial on April 29, 2014, but he was told on July 2, 2014, after he had been convicted, that a court order was needed for the interview because Pina was incarcerated. (Id. at 19.) He states that he was told that his assigned investigator was not

returning telephone calls or emails, and had essentially gone missing during the period Petitioner needed him to interview Pina. (Id. at 19-20, 29.)

Respondent answers that it was Petitioner's failure to properly follow procedures which resulted in the failure to have Pina interviewed, and in any case he is unable to show prejudice because he "was caught red handed," and fails to identify any exculpatory evidence Pina could have provided. (Ans. Mem. at 17-18.) Petitioner replies that no one knows what Pina would have said, and that an evidentiary hearing is needed to resolve the factual dispute as to whose fault it was Pina was not interviewed. (Traverse at 4-5, 8-9.)

The Court will look through the silent denial by the state supreme court to the last reasoned decision regarding this claim, the state appellate court order denying the second appellate court habeas petition. Ylst, 501 U.S. at 803-06. The appellate court stated:

> Morales has neither specifically alleged what Pina would have said regarding entrapment had he been timely interviewed and then summoned to testify at trial nor provided a declaration from Pina concerning such testimony. In any event, the evidence introduced at trial does not even remotely suggest the possibility of an entrapment defense. As summarized in the opinion on appeal, undercover police officers approached Pina on the street and said they wanted to buy drugs, Pina telephoned Morales and obtained drugs from him, and Pina then completed the sale. Morales's conclusory assertions he was entrapped, made without any evidentiary support in the record, are insufficient to satisfy his pleading burden on the claims he was deprived of due process and a fair trial.

(Lodgment No. 18, In re Morales, No. D070421, order at 2.)

"Few rights are more fundamental than that of an accused to present witnesses in his own defense." Chambers v. Mississippi, 410 U.S. 284, 302 (1973). "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" Crane v. Kentucky, 476 U.S. 683, 690 (1986), quoting California v. Trombetta, 467 U.S. 479, 485 (1984) ("Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness.")

Petitioner alleges that he could have undermined the People's case by showing that Pina pleaded guilty to selling drugs because, according to Petitioner, Pina did not sell drugs, but committed an humanitarian act by facilitating a drug purchase by a person Pina believed to be a homeless amputee. (Pet. at 19-29.) Petitioner states: "Pina was a favorable and material witness specifically in regards to the interactions between himself and the detective. Petitioner, nor the jury, was given the opportunity to hear Pina's side of the story. Would it have supported an entrapment defense? Petitioner and the jury were never given the opportunity to find out." (Traverse at 5.) During his new trial motion, Petitioner argued that "Pina's testimony would have presented evidence towards the behavior of Detective Queen that could have been used in the defense." (RT 522-23.) However, Petitioner merely identified actions by Detective Queen which the jury already heard about, that he was impersonating a homeless amputee, that he targeted Pina to assist him in finding someone from whom to buy narcotics, that $10 is a lot of money to a hungry homeless drug addict like Pina, and that Detective Queen facilitated setting Petitioner up by allowing Pina to use his cellphone to call Petitioner. (RT 534-37.)

At trial, the jury heard Detective Queen testify regarding Pina's participation in the crimes, including Pina referring to Petitioner as his "homeboy," Pina knowing Petitioner's cellphone number, Pina knowing that Petitioner could supply methamphetamine, and Pina facilitating the drug sale. Petitioner was arrested with a baggie of methamphetamine in his pocket and one on the ground under his chair. The jury heard of the conversation between Pina and Petitioner in the back of the police car after they were arrested in which Petitioner admitted he had two "drops" on him when he was arrested, that it was a good thing the police did not see Pina give Petitioner the money, that Petitioner was concerned if the money Pina took was marked, their reference to Officer Queen as a "client," and Pina's statement that: "When you gave me that thing, I gave it to [the client]." (RT 316-27.)

There is no indication that Pina had anything to say which would have been helpful to the defense, and it appears much more likely that had Pina testified or given a statement, assuming he would have agreed to do so, it would have been harmful to the defense.

Officer Queen merely observed Petitioner and Pina have a hand-to-hand exchange after Queen gave Pina the marked $60 and before Pina gave the methamphetamine to Queen, whereas Pina might have testified that he gave Petitioner the money and Petitioner gave him the methamphetamine. Thus, Pina's testimony or statement might have implicated Petitioner more directly than the evidence presented at trial. It is mere speculation on Petitioner's part that Pina might have provided testimony favorable to an entrapment defense, which would have required him to contradict Officer's Queen's testimony that he merely asked Pina if he could help him obtain drugs, that Pina volunteered assistance by locating his "homeboy" Petitioner, facilitated the drug sale, and accepted $10 for his role. See Bradley v. Duncan, 315 F.3d 1091, 1095 (9th Cir. 2002) (recognizing that "[i]t is permissible for the police to offer 'the simple opportunity to act unlawfully,'" whereas entrapment under California law is shown where the police "pressure the suspect by overbearing conduct such as badgering, cajoling, importuning, or other affirmative acts likely to induce a normally law-abiding person to commit the crime."), quoting People v. Barraza, 23 Cal.3d 675, 689-90 (1979). It was objectively reasonably for the state court to reject Petitioner's contention that Officer Queen's actions of approaching a hungry homeless drug addict while impersonating a homeless amputee and simply asking for help purchasing narcotics, was sufficient to support an entrapment defense.

Petitioner's continued reliance on speculation as to what Pina might have been willing to testify to at trial, and his conclusory contention that it could have helped establish an entrapment defense, are insufficient to provide for habeas relief. See James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) (holding that speculative and conclusory allegations are insufficient to support federal habeas relief). Because Petitioner has not shown that he was deprived of a "meaningful opportunity to present a complete defense" by his inability to interview Pina or call him as a witness, he has not alleged facts which, if true, show a federal constitutional violation. Crane, 476 U.S. at 690; Trombetta, 467 U.S. at 485.

The Court finds that the state court adjudication of claim one, on the basis that Petitioner failed to identify what evidence favorable to the defense his codefendant could

have presented, is neither contrary to, nor involves an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts. Accordingly, the Court recommends denying habeas relief as to claim one.

### D. Claim Two

Petitioner contends in claim two that he received ineffective assistance of appellate counsel due to counsel's failure to raise claim one on appeal. (Pet. at 28-29.) Respondent answers that because Petitioner was not denied his right to compulsory process or investigative services as set forth in claim one, his appellate counsel was not deficient in failing to present such a claim on appeal. (Ans. Mem. at 18-19.) Petitioner replies that appellate counsel was deficient in failing to raise a meritorious claim, and he was prejudiced because he would have prevailed on appeal. (Traverse at 5-6.)

The Court will look through the silent denial of Petitioner's habeas petition by the state supreme court to the last reasoned decision regarding this claim, the state appellate court order denying his first appellate court habeas petition, which stated:

> Finally, without any evidence to support an entrapment defense in the record, appellate counsel did not provide ineffective assistance by failing to raise claims of error dependent on such evidence. (See e.g., *In re Smith* (1970) 3 Cal.3d 192, 202 (appellate counsel has duty "to raise crucial assignments of error, which arguably might have resulted in a reversal"); *Redante v. Yockelson* (2003) 112 Cal.App.4th 1351, 1357 (appellate counsel has "no duty to argue every issue (the client) wanted to raise, but rather was entitled to assess which issues were potentially meritorious").)

(Lodgment No. 18, In re Morales, No. D070421, order at 2.)

The clearly established United States Supreme Court law governing ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668 (1984). See Turner v. Calderon, 281 F.3d 851, 872 (9th Cir. 2002) (explaining that the Strickland standard applies to claims of ineffective assistance of appellate counsel). For ineffective assistance of counsel to provide for relief, Petitioner must show that counsel's performance was deficient. Strickland, 466 U.S. at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant

by the Sixth Amendment." Id. He must also show that counsel's deficient performance prejudiced the defense, which requires showing that "counsel's errors were so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable." Id. To show prejudice, Petitioner need only demonstrate a reasonable probability that the result of the proceeding would have been different absent the error. Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. Petitioner must establish both deficient performance and prejudice in order to establish ineffective assistance of counsel. Id. at 687. "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "The standards created by Strickland and section 2254(d) are both highly deferential and when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105. These standards are "difficult to meet" and "demands that state court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

The finding by the state appellate court that Petitioner did not show that his appellate counsel was deficient in failing to raise a meritless claim is objectively reasonable because appellate counsel was entitled to make a tactical decision not to raise such a weak and unsupported claim. Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989) (holding that appellate counsel has no constitutional obligation to raise every nonfrivolous issue on appeal because "[i]n many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy."); Gustave v. United States, 627 F.2d 901, 906 (9th Cir. 1980) ("There is no requirement that an attorney appeal issues that are clearly untenable.")

It is clear from the discussion in claim one above that it was objectively reasonable for the state appellate court to find that Petitioner did not support his speculative and conclusory allegation that interviewing his codefendant Pina would have assisted the defense. See Burt v. Titlow, 571 U.S. ___, 134 S.Ct. 10, 17 (2013) ("It should go without saying that the absence of evidence cannot overcome the 'strong presumption that

counsel's conduct (fell) within the wide range of reasonable professional assistance."), quoting <u>Strickland</u>, 466 U.S. at 689; <u>see also</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977) (vague and conclusory allegations are insufficient to prove counsel provided ineffective assistance).

The Court finds that the state court adjudication of claim two is neither contrary to, nor involves an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, the Court recommends denying habeas relief as to claim two.

## E.    Claim Three

Petitioner contends in claim three that he received ineffective assistance of counsel at his Proposition 47 hearing by counsel's act of "waiving Petitioner's right to be present & waiving time for sentencing without Petitioner giving up those rights." (Pet. at 30.) He also claims that the time he served on his sentence should have been reduced by the seventeen-month delay between his original sentencing and his resentencing, and that he was not informed by counsel of the outcome of the hearing in time to appeal. (<u>Id.</u>)

Respondent answers that there is no support in the record for Petitioner's contention that he did not waive his presence at the hearing, and he has therefore failed to overcome the presumption which applies in this Court that counsel's waiver of his presence was valid. (Ans. Mem. at 19-20.) Respondent also argues that Petitioner has not shown that his sentence should have been reduced any further than it was, or that he spent any additional time in custody than required. (<u>Id.</u> at 20-22.)

Petitioner replies that he was not informed of the Proposition 47 hearing until after it was over and therefore could not have waived his presence. (Traverse at 6-7.) He argues that when he was resentenced the court applied the same presentence credits as when he was originally sentenced, rather than add the seventeen months he had been in prison, for which he was entitled to an additional one-third good time credits. (<u>Id.</u> at 7-8.) The abstract of judgment was later amended to reflect the change in presentence credits, which he

contends is proof that he received ineffective assistance of counsel at the Proposition 47 hearing. (Id.)

Petitioner first presented this claim to a state court in the second habeas petition he filed in the trial court (Lodgment No. 19 at 14-16), which denied it as improperly presented in a successive petition. (Lodgment No. 20, In re Morales, No. HC22434, order at 3.) He then presented it in the second habeas petition he filed in the appellate court (Lodgment No. 21 at 17-18), which also denied it as improperly presented in a successive petition. (Lodgment No. 22, In re Morales, No. D071149, order at 2.) Finally, he presented it in his state supreme court habeas petition (Lodgment No. 23 at 12) which summarily denied it without citation of authority or a statement of reasoning. (Lodgment No. 24 at 1.) Thus, there is no lower state court decision rejecting the claim on the merits to which this Court could look through the silent denial by the state supreme court. When a federal habeas court addresses the merits of a claim which has not been adjudicated on the merits in state court, de novo review is appropriate. Pirtle v. Morgan, 313 F.3d 1160, 1167-68 (9th Cir. 2002). Under such a review, "state court judgments of conviction and sentence carry a presumption of finality and legality and may be set aside only when a state prisoner carries his burden of proving that (his) detention violates the fundamental liberties of the person, safeguarded against state action by the Federal Constitution." Hayes v. Brown, 399 F.3d 972, 978 (9th Cir. 2005) (en banc).

Petitioner was sentenced on July 11, 2014, and Proposition 47 became effective on November 5, 2014. A Proposition 47 petition was filed on his behalf on November 17, 2014. (Lodgment No. 11.) On January 12, 2015, Petitioner's appellate counsel filed an opening brief on appeal which included a claim alleging that the passage of Proposition 47, which occurred after Petitioner's trial but before his opening brief on appeal was due, required that he be resentenced, but recognized there was uncertainty in the law regarding whether Petitioner was required to wait until his conviction was final before filing a Proposition 47 petition in the trial court. (Lodgment No. 4 at 37-50.) On April 10, 2015, in response to several letters, Petitioner received a letter from counsel appointed to

represent him in a Riverside Superior Court action challenging his prisoner classification, which informed him that his Proposition 47 petition had been filed in the trial court by the Public Defender's Office, but that the District Attorney had taken the position that it could not be adjudicated while his direct appeal was pending. (Pet. Ex. I.)

On November 12, 2015, the appellate court affirmed Petitioner's convictions, and recognized that Proposition 47 had been interpreted, while the appeal was pending, as requiring a defendant to seek relief in the trial court after his conviction became final on appeal. (Lodgment No. 7, People v. Morales, No. D066337, slip op. at 14-16.) Petitioner received a letter from his appellate counsel on December 15, 2015, informing him that a different Public Defender was assigned to handle Proposition 47 petitions, and that his petition would be filed after the appellate court issued the remittitur on his appeal. (Pet. Ex. J.) It is unclear whether a new petition was filed or if the trial court ruled on the November 17, 2014 petition, but on December 11, 2015, the prosecutor agreed the petition should be granted as to count three only. (Lodgment No. 12.) On December 22, 2015, the petition was denied as to counts one and two and granted as to count three, which was reduced to a misdemeanor, and Petitioner was resentenced to time served on count three. (Lodgment Nos. 12-13.) The court minutes reflect that Petitioner waived his presence at the hearing, and that his seven year sentence was not affected, apparently because he was sentenced to seven years on count one with concurrent sentences on counts two and three. (Lodgment No. 13.) Petitioner states that he was informed by counsel of the outcome by letter dated February 19, 2016, which he contends he received four or five days later, after the 60 day time limit to appeal had expired on February 22, 2016. (Pet. Ex. K.)

On October 26, 2016, a staff attorney at Appellate Defenders sent a letter brief to the trial judge, which was filed in the trial court on October 31, 2016, explaining that: "I discovered what appears to be an error in the calculation of Mr. Morales' presentence credits after Mr. Morales was resentenced on December 22, 2015." (Lodgment No. 14.) The letter brief explains that Petitioner's custody credits should have been recalculated at resentencing, but does not suggest the seven-year sentence should be reduced. (Id.)

Petitioner's abstract of judgment was amended on January 12, 2017, to reflect a change from 272 days credit for time served (consisting of 136 actual days and 136 conduct credits) in his original judgment, to 1328 days credit for time served (664 actual and 664 conduct credits) in the amended judgment. (Traverse Exs. C-D.)

Accordingly, Petitioner's argument that he was entitled to have his custody credits recalculated upon resentencing to reflect his time served was presented to the trial court by counsel, and his abstract of judgment was amended as a result. Petitioner does not indicate how his seven-year sentence on count one would have been reduced by reflecting in the abstract of judgment that he had already served seventeen months on that seven-year sentence. Rather, he states: "Petitioner does not argue that his 7 year sentence should have been lowered but argues that if PC 2900.1 would have been applied correctly petitioner would be doing less time on his current commitment." (Traverse at 8.) Although unclear, he apparently argues, without any support whatsoever, that he should have been given credit for the good conduct credits twice, once because he actually served the time and accrued the credits, and once again because it was reflected in the amended abstract of judgment. Petitioner has not alleged facts which, if true, show deficient performance or prejudice regarding this unsupported allegation.

Even assuming Petitioner is correct that he was not informed of the outcome of his Proposition 47 hearing until it was too late to appeal, he has failed to allege prejudice from counsel's alleged deficiency. He has not alleged any basis for challenging the finding that although he was entitled to have his conviction for violation of California Health and Safety Code § 11377 on count three reduced from a felony to a misdemeanor, he was not entitled to resentencing on his convictions for California Health and Safety Code § 11379 (count one) or California Health and Safety Code § 11378 (count two), both of which are categorically excluded from Proposition 47 relief. <u>See</u> Cal. Penal Code § 1170.18(a) (listing the crimes which are eligible for resentencing, including violations of California Health and Safety Code §§ 11377, 11350 and 11357, involving possession of drugs, but not including §§ 11379 or 11378, involving sale and possession for sale of drugs). Thus,

Petitioner has failed to establish prejudice as a result of any alleged deficiency of his Proposition 47 counsel. Strickland, 466 U.S. at 694 (prejudice requires a showing of a reasonable probability that the result of the proceeding would have been different absent the error, that is "a probability sufficient to undermine confidence in the outcome.") Even to the extent that under a liberal construction of Petitioner's pro se pleadings he intended to directly challenge his resentencing, he is not entitled to federal habeas relief. See Sturm v. California Youth Authority, 395 F.2d 446, 448 (9th Cir. 1967) ("a state court's interpretation of its [sentencing] statute does not raise a federal question."); Richmond v. Lewis, 506 U.S. 40, 50 (1992) ("Of course, the question to be decided by a federal court on petition for habeas corpus is . . . whether [a state law sentencing error] is so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation.") (internal citation and quote marks omitted).

The Court finds that Petitioner is not entitled to federal habeas relief as to his claim that his Proposition 47 counsel rendered constitutionally ineffective assistance of counsel because he has failed to allege facts which, if true, demonstrate deficient performance or prejudice. Accordingly, the Court recommends denying habeas relief as to claim three.

## F. Claim Four

Petitioner alleges in claim four that the trial court abused its discretion when it denied his second habeas petition as successive. (Pet. at 31-32.) He contends that after the first habeas petition was denied on the basis that he had failed to state a prima facie case for relief, he "discovered new facts and new law that substantially affected his rights prospectively." (Id. at 31.) These include a copy of the minute order granting in part and denying in part his Proposition 47 petition, a letter from the office of the Public Defender stating that he was resentenced two months after the Proposition 47 hearing, and "transcripts and other documents." (Id.) Respondent answers that the rejection by the state court of this claim is based solely on an application of state law, and therefore does not raise a claim cognizable on federal habeas. (Ans. Mem. at 22-23.)

/ / /

This claim was presented to the state supreme court in a habeas petition and summarily denied. (Lodgment Nos. 23-24.) The only other state court to which it was presented is the appellate court in the second appellate court habeas petition, which stated:

> Finally, this court does not address the complaints Morales makes against the superior court's order denying habeas corpus relief. That order is neither appealable nor otherwise reviewable by this court. (*In re Clark, supra*, 5 Cal.4th at p. 767, fn. 7; *Jackson v. Superior Court* (2010) 189 Cal.App.4th 1051, 1064.)

(Lodgment No. 22, In re Morales, No. D071149, order at 2-3.)

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). Habeas relief is not available for an alleged error in the interpretation or application of state law. Id. at 67-68. Moreover, even if Petitioner could show an error in state law, he has not shown a federal due process violation arising from the trial court finding his claims to be procedurally barred as successive, because this Court has addressed his claims on their merits and found no basis for relief. See e.g. id. at 72 (holding that to merit federal habeas relief based on an error of state law, the petitioner must show that the error, considered in the context of the record as a whole, so infected the entire proceedings that the conviction violated due process).

The Court finds that the state court adjudication of claim four is neither contrary to, nor involves an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, the Court recommends denying habeas relief as to claim four.

## G.     Claim Five

In his final claim Petitioner contends that the appellate court abused its discretion when it denied his second habeas petition as untimely. (Pet. at 32-33.) He contends he was challenging the calculation of sentence credits, and under state law any challenge to excessive punishment is timely, that he was prejudiced by the state court refusing to address

that claim, and that in any case he filed his state habeas petitions within one year of the denial of his direct appeal as provided by 28 U.S.C. § 2244(d)(1)(A). (Id.)

Respondent answers that the state court correctly determined that the petition was untimely under state law and correctly determined that an appeal does not lie for the denial of a trial court habeas petition, and that this Court is bound by determinations of state law by a state court. (Ans. Mem. at 23-24.) Respondent also argues that state sentencing errors are not cognizable on federal habeas, and that in any case Petitioner has not identified an error because he was properly resentenced on count three and properly required to serve his full seven-year term on count one. (Id. at 25-26.)

The only state court to which claim five was presented is the state supreme court in a habeas petition, and the only federal aspect of the claim presented to that court is Petitioner's reliance on the triggering date for the one-year statute of limitations for filing his Petition in this Court. (Lodgment No. 23 at 14-15.) That petition was summarily denied. (Lodgment No. 24.) Because no state court expressly addressed this claim, the Court must presume the silent denial by the state supreme court was a decision on the merits. Richter, 562 U.S. at 102. The Court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of" the Supreme Court. Id.

The state supreme court could have reasonably denied the federal aspect of this claim on the basis that the statute of limitations applicable to the filing of federal petitions in federal court has no relevance to the state timeliness rules. Rather, California's timeliness rule requires that a petitioner seek relief without "substantial delay" as "measured from the time the petitioner or counsel knew, or should reasonably have known, of the information offered in support of the claim and the legal basis for the claim." Walker, 562 U.S. at 312-21. As the state appellate court observed, Petitioner waited nearly two years after he was sentenced to raise his trial error claims in his first appellate court habeas petition, and waited nearly a year after his Proposition 47 petition was denied to file his second appellate

court habeas petition raising his Proposition 47 claim.  (Lodgment No. 18, <u>In re Morales</u>, No. D070421, order at 2; Lodgment No. 22, <u>In re Morales</u>, No. D071149, order at 2.) Petitioner has not identified an error in the appellate court's application of its timeliness rule, and even if he could, he has not shown a federal due process violation because the Court has denied his federal claims on the merits irrespective of the state procedural bar. <u>See e.g.</u> <u>Estelle</u>, 502 U.S. at 72 (holding that to merit federal habeas relief based on an error of state law, the petitioner must show that the error, considered in the context of the record as a whole, so infected the entire proceedings that the conviction violated due process).

The Court finds that the state court adjudication of claim five is neither contrary to, nor involves an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts.  Accordingly, the Court recommends denying habeas relief as to claim five.

## H.  Evidentiary Hearing

Petitioner requests an evidentiary hearing to resolve disputed facts regarding who was at fault regarding the failure to interview his co-defendant Pina.  (Traverse at 8-9.) The Court recommends denying Petitioner's request for an evidentiary hearing because, even assuming the allegations in the Petition are true, the state court record provides an adequate basis to adjudicate his claims.  <u>See</u> <u>Campbell v. Wood</u>, 18 F.3d 662, 679 (9th Cir. 1994) (holding that an evidentiary hearing is not necessary where the federal claim can be denied on the basis of the state court record, and where the allegations, even if true, do not provide a basis for relief).

## IV.  <u>CONCLUSION</u>

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered denying the Petition.

**IT IS ORDERED** that no later than **<u>September 5, 2017</u>**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

17cv0210-AJB (NLS)

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **September 19, 2017.** The parties are advised that failure to file objections with the specified time may waive the right to raise those objections on appeal of the Court's order. <u>See</u> <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: August 11, 2017

Hon. Nita L. Stormes
United States Magistrate Judge

17cv0210-AJB (NLS)