UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Nestor R. Morales,<br><br>        Petitioner,<br><br>v.<br><br>C.Y. Tampkins, Warden,<br><br>        Respondent. | Case No.: 17-cv-0210-AJB (NLS)<br><br>**ORDER:**<br><br>**1) ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, (Doc. No. 12);**<br><br>**2) OVERRULING PETITIONER'S OBJECTION, (Doc. No. 14);**<br><br>**3) DISMISSING PETITIONER'S HABEAS PETITION, (Doc. No. 1); and**<br><br>**4) DENYING CERTIFICATE OF APPEALABILITY.** |

  Nestor R. Morales, a state prisoner proceeding *pro se,* has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. His petition challenges his July 11, 2014 convictions for the sale, possession for sale, and possession of methamphetamine. Petitioner raises one claim: his federal constitutional rights to compulsory process and to an effective investigator were violated when he was prevented from obtaining a statement from his codefendant Pina. Before the Court is Petitioner's habeas petition, (Doc. No. 1), Magistrate Judge Nita Stormes's Report and Recommendation ("R&R") that the Court
1

deny the petition, (Doc. No. 12), and Petitioner's Objection to the R&R, (Doc. No. 14).

Following *de novo* review of Petitioner's objection, the Court finds Magistrate Judge Stormes's R&R to be an accurate analysis of the legal issues. For the reasons stated herein, the Court **ADOPTS** the R&R, **REJECTS** Petitioner's Objection, **DISMISSES** Petitioner's habeas writ, and **DENIES** a certificate of appealability.

## I. BACKGROUND

The Court incorporates the procedural background and underlying facts as detailed in the R&R, and will briefly reiterate the points pertinent to this order. (Doc. No. 12 at 3–17.)

### A. Trial Proceeding

San Diego Police Officer John Queen testified that on October 16, 2016, he was working undercover during a narcotics buy/bust operation when he approached Jorge Aguiniga and Petitioner's co-defendant, Jose Pina. Officer Queen asked if they knew where he could get some "black." Pina replied he could get "cris" from his "homeboy." After having difficulty locating his "homeboy," Detective Queen offered Pina his cell phone. Pina made a call and said "[H]e had 60 and wanted to meet up."

The men then walked around downtown and Pina made several calls in an attempt to locate his friend. At this point, Officer Queen told Pina he would give him $10 for helping him. Thereafter, Pina pointed out Petitioner. Officer Queen handed Pina three marked $20 bills and Pina went over to speak to Petitioner. Upon returning, Pina relayed to Officer Queen that they had to go into the Subway restaurant so Petitioner could go to the bathroom and get the methamphetamine. Officer Queen then observed the following. Petitioner went into the bathroom, came out, and exited the restaurant with Pina. Pina and Petitioner then walked a few feet away and huddled face to face. There, Officer Queen observed Pina and Petitioner make a hand-to-hand transaction. Pina then approached Officer Queen giving him a plastic bindle containing .42 grams of methamphetamine. In return, Officer Queen gave Pina a marked $10 bill.

Officer Queen subsequently gave a bust signal to the other officers in the area and

Petitioner and Pina were arrested.

## II. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1), the district court judge should "make a de novo determination of those portions of the report to which the objection is made," and "may accept, reject, or modify in whole or in part, the finding or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989).

## III. DISCUSSION

**A. Claim One: Violation of Rights to Compulsory Process and to an Effective Investigator**

Petitioner claims his federal constitutional right to compulsory process and to an effective investigator were violated when he was prevented from obtaining a statement from his codefendant Pina. Petitioner contends Pina's testimony would have presented evidence in support of an entrapment defense. On this basis, Petitioner asserts he is entitled to an evidentiary hearing.

The R&R suggested habeas relief should be denied for this claim for the following reasons. First, there was no indication that Pina's testimony would have been helpful to Petitioner's entrapment defense. (Doc. No. 12 at 17.) Rather, even if Pina agreed to testify, it was much more likely Pina's testimony would be harmful to the defense. (*Id.*) Second, Petitioner's claim relied on pure speculation as to the content of Pina's testimony and made a conclusory assertion that it would establish an entrapment defense. (*Id.* at 18.) The R&R cited the appellate court's reasoning:

> The evidence introduced at trial does not even remotely suggest the possibility of an entrapment defense. . . . [U]ndercover police officers approached Pina on the street and said they wanted to buy drugs, Pina telephoned Morales and obtained drugs from him, and Pina then completed the sale. Morales's conclusory assertions that he was entrapped, made without any evidentiary support in the record, are insufficient to satisfy his pleading burden on the claims he was deprived of due process and fair trial.

(Doc. No. 12 (*quoting* Lodgment No. 18, *In re Morales*, No. D070421, order at 2).)

However, here, Petitioner no longer relies on Pina's speculative testimony. In Petitioner's Objection, (Doc. No. 14 at 1–4), he included a declaration from Pina concerning this testimony. In the declaration Pina asserted the following:

> On October 13, I had just returned from Mexico and was in my addiction. I was walking with another addict. At that moment I was not selling drugs or committing a crime. I was just walking down the street. We were high and I was trying to get some extra money so I can buy food and get a room, that's when Detective Queen singled me and my friend and approached us. To me he looked like a disable veteran. He had a can of beer, in a wheel chair, with one leg cut off. He told us that he was sick and needed some black. I felt sorry for him, but also saw an opportunity to continue getting high while helping him get his fix.
>
> Being a drug addict most of my entire life I know when someone is looking for black, most of the time they are sick and going with withdrawals. That's when the addict in me told him that I did don't were to get black but if you are sick I can help you out with some crystal meth. I started to go look for my homeboy who I just saw go by in a bike. The homeboy I saw was not Nestor Morales. It was another homeboy. I went looking for that homeboy and ran down the street. After not locating the homeboy on the bike I went back to the guy in the wheel chair and told him that I could not find my homeboy, that's when Officer Queen offered me the 1st his cell phone to call my homeboy. The homeboy I called was not the same homeboy I saw on the bike. I call Nestor Morales.
>
> When I called Nestor, he picked up the phone and I asked him for sixty. He told me that he was not doing anything, and that's when I told him to hook me up. Nestor told me to meet him at the library. Nestor reluctantly offered to help me. After I gave the home back to Queen, I told him we need to go to the public library on 12th and imperial. Queen asked me to call him again and if we can meet closer than the library. Per Queen's suggestion, I called Nestor for the 2nd time and asked him if we can me closer than the library. Nestor said lets meet at the city college toll station. I gave the phone back to Queen. At that moment I asked Queen to take the trolley. Queen said no because it was too much trouble. I assumed that he meant that he was in too much pain So we walked.
>
> When we reached the city college trolley station Queen again coerced me to call Nestor again for the 3rd time. He seemed impatient. Again to me he seemed like he needed his fix, even though we were talking about partying in

4

tj. I called Nestor again, and Nestor said that he is one the way. I relayed the message to Queen. While we were waiting only a few minutes went by when Queen for the 4th time told me to call him again. I call Nestor and he said I'm almost there. When Nestor arrived the drug deal went down and Nestor and I were arrested for selling drugs to an undercover officer.

For the record, I felt that I was entrapped. Queen singled me out on the street to help him commit a crime. These are the reasons I helped him obtain drugs. First of all, I was a homeless addict when he approached me. I saw an opportunity to continue getting high and to get a room for the night. I believed that Queen was a disable vet looking to relieve his pain. He fooled me to believing that he needed help because he first asked for black. All I saw was a man in a wheel chair with one leg cut off.

I was in my addiction when I first meet him. I was not committing a crime. When I first left him to go look for my homeboy and return when I couldn't find him… he instigated the chain of events that lead me to help him. He could have gone on his way when I told him I could not find my homeboy. He instead gave me his phone, not once but four times. I'm thinking that he is sick but in all actuality he was in a rush to make an arrest. His costume fool me into helping him. I was a citizen abiding the law when he approached to create a crime.

(Doc. No. 14 at 3–4.)

To establish an entrapment defense, the defendant has the burden to prove governmental involvement in creating the criminal activity. Under California law, the test for entrapment is whether "the conduct of the law enforcement agents or officers would likely induce a normally law-abiding person to commit the crime." *People v. Barraza,* 23 Cal. 3d 675, 689–90 (1979) (stating it is acceptable for a police officer simply to offer the opportunity to act unlawfully, but it is unacceptable for the police officer "to pressure the suspect by overbearing conduct such as badgering, cajoling, importuning, or other affirmative acts likely to induce a normally law-abiding person to commit the crime," or to induce such a person "to commit the act because of friendship or sympathy, instead of a desire for personal gain or other typical criminal purpose.")

Petitioner contends that Pina's testimony would have presented evidence towards the behavior of Detective Queen that could have been used in the defense of entrapment.

(Doc. No. 12 at 17.) *See People v. Mcintire*, 23 Cal. 3d 742, 748 (1979) ("manipulation of a third party by law enforcement officers to procure the commission of a criminal offense by another renders the third party a government agent for purposes of the entrapment defense, even though the third party remains unaware of the law enforcement object."); *See also U.S. v. Fontenot*, 14 F.3d 1364, 1369 (9th Cir. 1994) (discussing when an informant or private citizen becomes a government agent for the purposes of an entrapment defense).

However, here, the Court finds Petitioner's claim fails and is without merit. The R&R stated, to provide evidence favorable to an entrapment defense, requires Pina's testimony to contradict Officer Queen's statements that "he merely asked Pina if he could help him obtain drugs, that Pina volunteered assistance by locating his 'homeboy' Petitioner, facilitated the drug sale, and accepted $10 for his role." (Doc. No. 12 at 18.) Pina's declaration does not contradict, but confirms these facts. Further, in trial, the jury heard that Detective Queen was impersonating a homeless amputee, that he targeted Pina to assist him in finding someone whom he could buy narcotics from, that the $10 was a lot of money to a hungry homeless drug addict like Pina, and Officer Queen facilitated setting Petitioner up by allowing Pina to use his cell phone to call Petitioner. (Doc. No. 12 at 17.) Thus, it was reasonable for the state court to reject Petitioner's contention that Officer Queen's actions were sufficient to support an entrapment defense.

Further, Pina's recitation of unacceptable behavior on Officer Queen's part could not reasonably be construed as an exertion of pressure, badgering, or cajoling to the point that Pina's resistance was worn down and he succumbed pressure to commit the crime. First, Officer Queen merely asked Pina if he knew where to get some black. (Doc. No. 12 at 4–5.) When Pina could not find his "homeboy," Officer Queen offered his cellphone to Pina and Pina called Petitioner. (*Id.* at 5.) Thereafter, according to Pina's declaration, Officer Queen asked Pina to repeatedly call Petitioner because Pina believed Officer Queen seemed "impatient and needed his fix." (Doc. No. 14 at 3–4.) The substantial evidence presented at trial and Pina's own declaration demonstrate he helped Officer Queen not because he was pressured, but because he saw it as "an opportunity to get high and rent a

room for the night." (*Id.* at 4.) Thus, Pina was not a normally law-abiding citizen and there is no probability a juror would have found Pina was entrapped into assisting Officer Queen in purchasing drugs.

Based on the Court's de novo review of the record and Pina's declaration, (Doc. No. 14 at 3–4), the Court agrees with the R&R's reasoning and finds federal habeas relief is unavailable. Petitioner's claim for relief on the entrapment defense clearly fails on the merits and as such, the evidentiary hearing is unnecessary. Petitioner's objection to the R&R on that claim is **DENIED.**

## B. Denying Issuance of a Certificate of Appealability

When a district court enters a final order adverse to the applicant in a habeas corpus proceeding, it must either issue or deny a certificate of appealability, which is required to appeal a final order in a habeas corpus proceeding. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability is appropriate only where the petitioner makes "a substantial showing of the denial of a constitutional right." *Miller-El v. Cockrell*, 537 U.S. 322, 330 (2003) (quoting 28 U.S.C. § 2253(c)(2)). Under this standard, the petitioner must demonstrate that "reasonable jurists could debate whether [] the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (citation and internal quotation marks omitted). Here, the Court finds that reasonable jurists could not debate the Court's conclusion to dismiss with prejudice Petitioner's claims and therefore **DECLINES** to issue a certificate of appealability.

## IV. CONCLUSION

For the reasons stated herein, the Court **ADOPTS** Magistrate Judge Nita L. Stormes's well-reasoned R&R, (Doc. No. 12), **REJECTS** Petitioner's Objections, (Doc. No. 14), **DISMISSES** Petitioner's habeas writ, (Doc. No. 1), and **DENIES** a certificate of appealability. The Court Clerk is instructed to close the case.

**IT IS SO ORDERED.**

7

Dated: August 15, 2019

_____
Hon. Anthony J. Battaglia
United States District Judge